UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ASPEN AMERICAN INSURANCE COMPANY, as subrogee of Po Po Isa Chui, <br><br> Plaintiff, <br><br> v. <br><br> BRASSCRAFT MANUFACTURING COMPANY, HARPE 94 REALTY TRUST, and 1051 BEACON STREET CONDOMINIUM TRUST, <br><br> Defendants. | Civil Action No. 23-10679-FDS |

**MEMORANDUM AND ORDER ON DEFENDANT
BRASSCRAFT MANUFACTURING COMPANY'S MOTIONS TO DISMISS**

**SAYLOR, C.J.**

This is a dispute arising out of a connection on a water-supply line manufactured by BrassCraft Manufacturing Company and installed in a property in Brookline, Massachusetts. The line allegedly cracked, resulting in water damage to an adjacent property owned by Dr. Po Po Isa Chui. Plaintiff Aspen American Insurance Company, the insurer for Dr. Chui, has sued BrassCraft, Harpe 94 Realty Trust (the owner of the adjacent property where the leak occurred), and 1051 Beacon Street Condominium Trust (the homeowners' association for both properties), seeking reimbursement as subrogee for the policy benefits it paid to Dr. Chui.

BrassCraft has moved to dismiss the complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). BrassCraft has also moved to dismiss the

cross-claims filed against it by Harpe 94 under Fed. R. Civ. P. 12(b)(6). For the following reasons, the motions will be granted in part and denied in part.

I.  **Background**

   A.  **Factual Background**

According to the amended complaint, Dr. Po Po Isa Chui owned the property located at 1051 Beacon Street, Suite 102, in Brookline, Massachusetts. Harpe 94 owned the property located at Suite 204 at the same address. (Docket No. 23 ¶ 8-9). The 1051 Beacon Street Condominium Trust was the homeowner's association for the property. (*Id.* at ¶ 10).

At some point prior to April 20, 2020, new toilets were installed at 1051 Beacon Street, including in Suite 204. (*Id.* at ¶ 12). Those toilets "were installed using BrassCraft water supply lines and materials." (*Id.* at ¶ 13). On April 20, 2020, "it was discovered that a plastic connection for a BrassCraft water supply line attached to a toilet" had cracked in Suite 204, causing flooding that resulted in "significant water damage" to Suite 102. (*Id.* at ¶ 14).[1]

Dr. Chui had an insurance policy with Aspen American Insurance Company. Dr. Chui submitted a claim to Aspen for "damage and destruction to her real and personal property and damages as a result of the interruption of her business." (*Id.* at ¶ 15). Aspen paid more than $800,000 to Dr. Chui for those damages. (*Id.* at ¶ 16).

   B.  **Procedural Background**

The amended complaint asserts four counts: (1) a breach of warranty claim against BrassCraft, (2) a negligence claim against BrassCraft, (3) a negligence claim against Harpe 94, and (4) a negligence claim against 1051 Beacon Street Condominium Trust.

---

[1] The amended complaint describes the "plastic connection" as "the water supply valve and/or supply line's coupling nut." (*Id.*).

On October 18, 2023, Harpe 94 filed an answer to plaintiff's complaint and asserted five cross-claims: (1) a contribution claim against BrassCraft, (2) an indemnification claim against BrassCraft, (3) a breach of warranty claim against BrassCraft, (4) a contribution claim against 1051 Beacon, and (4) an indemnification claim against 1051 Beacon.

BrassCraft has moved to dismiss the amended complaint and to dismiss the cross-claims against it under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## II.     Standard of Review

On a motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).[2]

---

[2] The same legal standard applies on a motion to dismiss a cross-claim. The court "must assume the truth of all well-plead[ed] facts and give . . . [cross-claimant] the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.

3

## III. Analysis

### A. The Complaint

#### 1. Claim for Breach of Warranties (Count 1)

The amended complaint alleges that defendant BrassCraft "expressly and impliedly warranted" that the water supply valve and/or supply line's coupling nut was "fit for the particular and ordinary purpose for which it was intended and that the water supply valve and/or supply line's coupling nut was of good and merchantable quality." (Docket No. 23 ¶ 19). It further alleges that "[b]y designing, manufacturing, distributing, selling and/or supplying the water supply valve and/or supply line's coupling nut in a defective and unreasonably dangerous condition . . . defendant breached its express and implied warranties." (*Id.* at ¶ 20).

##### a. Express Warranty Claim

BrassCraft first contends that the complaint fails to "identify any particular affirmation or promise made by BrassCraft or an audience to whom the alleged affirmations were communicated." (Docket No. 27, 6).

Under Massachusetts law, an express warranty can be created in three ways:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the sample or model.
Mass. Gen. Laws ch. 106 § 14.

"Because the standard of performance is set by defendant's express promises to the

---

1999)).  To survive a motion to dismiss, the cross- claim must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

4

plaintiff, 'the plaintiff must demonstrate that the defendant promised a specific result' and that defendant failed to deliver on his promise and, therefore, breached the express warranty." *Jackson v. Johnson & Johnson & Janssen Pharms., Inc.*, 330 F. Supp. 3d 616, 627 (D. Mass. 2018) (quoting *Anthony's Pier Four, Inc. v. Crandall Dry Dock Eng'rs, Inc.*, 396 Mass. 818, 823 (1986)). "Furthermore, in an express warranty claim, plaintiff must show reliance on such warranty." *Sprague v. Upjohn Co.*, 1995 WL 376934, at *3 (D. Mass. May 10, 1994) (citing *Roth v. Ray-Stel's Hair Stylists, Inc.*, 18 Mass. App. Ct. 975, 976 (1984)).

Courts evaluating express-warranty claims must look to the specific affirmations or promises made by a defendant. *See, e.g., Niedner v. Ortho-McNeil Pharm., Inc.*, 90 Mass. App. Ct. 306, 313 (2016). If a plaintiff has not identified a specific affirmation or promise, then a factfinder cannot evaluate whether the affirmation or promise relates to the goods, whether the affirmation or promise is part of the basis of the bargain, or whether the goods conform to the affirmation or promise. *See Taupier v. Davol, Inc.*, 490 F. Supp. 3d 430, 438 (D. Mass. 2020).

Here, plaintiff has not produced any evidence establishing any specific affirmation or promise by BrassCraft. Indeed, while plaintiff maintains in its opposition to BrassCraft's motion that it "sufficiently alleges facts to state a claim for breach of *implied* warranty," it does not make any reference to the breach of express warranty claim. (Docket No. 33, 4) (emphasis added). Accordingly, the motion to dismiss as to the express warranty claim will be granted.

### b.  Implied Warranty Claim

BrassCraft next contends that the complaint fails "to allege, and sufficiently plead, both a design or manufacturing defect against BrassCraft," which is "fatal to [p]laintiff's claim for breach of implied warranty." (Docket No. 27, 4). Furthermore, it contends that plaintiff's claim fails because it does not "even suggest that the [p]roduct [at issue] deviated from its intended design" nor "plead facts sufficient to support a safer design alternative." (*Id.* at 6).

5

In Massachusetts products-liability cases, breach of implied warranty claims are functionally identical to strict-liability claims in other jurisdictions. *See Commonwealth v. Johnson Insulation*, 425 Mass. 650, 653-54 (1997). "Liability under this implied warranty is congruent in nearly all respects with the principles expressed in the RESTATEMENT (SECOND) OF TORTS § 402a (1968)." *Id.* (quotation omitted). To succeed on a claim alleging breach of implied warranty, the plaintiff must demonstrate (1) that the defendant manufactured or sold the product in question, (2) that a defect or unreasonably dangerous condition existed that rendered the product not suitable for the ordinary uses for which the product was sold, (3) that she was using the product in a manner that the defendant intended or could reasonably have foreseen, and (4) that the defect or unreasonably dangerous condition was a legal cause of her injuries. *AcBel Polytech, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 928 F.3d 110, 116 (1st Cir. 2019). "A product may be defective and unreasonably dangerous because of a manufacturing defect, a design defect, or a warning defect, that is, a failure reasonably to warn of the product's foreseeable risks of harm." *Evans v. Lorillard Tobacco, Co.*, 465 Mass. 411, 422 (2013).

Here, the complaint alleges that BrassCraft designed, manufactured, distributed, sold and/or supplied the allegedly defective product. (Docket No. 23 ¶ 20). The first question is whether the complaint states a claim for a design defect. For a design-defect claim, a plaintiff must "prove the availability of a technologically feasible and practical alternative design that would have reduced or prevented the plaintiff's harm." *Evans*, 465 Mass. at 428 (quoting RESTATEMENT (THIRD) OF TORTS: PRODUCT LIABILITY § 2 cmt. f (Am. L. Inst. 1998)). That inquiry requires the plaintiff to show that "the product in question could have been more safely designed, not that a different product was somehow safer." *Tersigni v. Wyeth*, 817 F.3d 364, 368 (1st Cir. 2016).

BrassCraft contends that the plaintiff's design-defect claim fails because the complaint "does not even make a conclusory allegation that a safer alternative exists, let alone plead facts sufficient to support a safer design alternative." (Docket No. 27, 6). Plaintiff responds that the "absence of an allegation of a feasible design alternative is not a basis for dismissal at this stage." (Docket No. 33, 6).

"Although proof of a safer alternative design may ultimately be required . . . it does not appear that Massachusetts law would require a plaintiff to plead the existence of an alternative design." *Taupier v. Davol*, 490 F. Supp 3d 430, 446 (D. Mass. 2020). As the First Circuit has explained, "Massachusetts product liability law may tolerate a finding of design defect even in the absence of evidence supporting the existence of a feasible alternative design." *Osorio v. One World Techs. Inc.*, 659 F.3d 81, 87 (1st Cir. 2011). *See also Gonzalez v. Johnson & Johnson Co.*, No. 20-CV-12057-RGS, 2022 WL 2658975, at n.5 (D. Mass. July 8, 2022).

Accordingly, the design-defect claim will not be dismissed at this stage of the proceedings. Whether plaintiff will actually be able to prove a design defect is a question that is better resolved on a full factual record.

The next question is whether the complaint states a claim for a manufacturing defect. A manufacturing defect may cause a product to be defective or unreasonably dangerous. *Evans*, 465 Mass. at 422. In a manufacturing-defect case, the factfinder must "compare the propensities of the product as sold with those which the product's designer intended it to have" and determine "whether the deviation from the design rendered the product unreasonably dangerous and therefore unfit for its ordinary purposes." *Back v. Wickes Corp.*, 375 Mass. 633, 641 (1978).

BrassCraft contends that the complaint does not make "any allegations to even suggest that the Product deviated from its intended design." (Docket No. 27, 5). The complaint,

7

however, alleges that BrassCraft "manufacture[ed] . . . the water supply valve and/or supply line's coupling nut in a defective and unreasonably dangerous condition." (Docket No. 23 ¶ 20). As a result, even though "it can be inferred that a connective piece is not supposed to spontaneously crack or burst," the water supply valve and/or supply line's coupling nut "cracked" on or around April 20, 2020. (*Id.* at ¶ 14; Docket No. 33, 6). The complaint further alleges that that defect resulted in "significant water damage." (Docket No. 23 ¶ 14). In addition, in a separate portion of the complaint, plaintiff notes that BrassCraft might have engaged in an "improper injection molding practice." (*Id.* at ¶ 23).

While bare-bones at best, the complaint is minimally sufficient under the circumstances to allege a plausible manufacturing-defect claim. The motion to dismiss will therefore be denied as to Count 1.

### 2. Claim for Negligence (Count 2)

Count 2 alleges that BrassCraft was negligent in the "design, manufacture, marketing and sale of the subject water supply valve and/or supply line's coupling nut and/or improper injection molding practice," negligent in "failing to provide proper and adequate warnings and instructions," and negligent "in otherwise failing to exercise reasonable care under the circumstances." (Docket No. 23 ¶ 23).

Count 2 does not allege one specific theory of negligence. Rather, the claims sound in negligent design, negligent manufacture, and negligent failure to warn. Under Massachusetts law, "[i]n most substantive aspects . . . the negligence and warranty inquiries are congruent." *Gillispie v. Sears, Roebuck & Co.*, 386 F.3d 21, 26 (1st Cir. 2004). Here, the claims for negligent design and negligent manufacture are entirely congruent. They are therefore duplicative of Count 1 and are subject to dismissal on that basis.

The remaining claim in Count 2 for negligent failure to warn will also be dismissed for failure to state a claim upon which relief can be granted. "A manufacturer of a product has a duty to warn foreseeable users of dangers in the use of that product of which he knows or should have known." *Mitchell v. Sky Climber, Inc.*, 396 Mass. 629, 631 (1986). A manufacturer may be held liable "even if the product does exactly what it is supposed to do, if it does not warn of the potential dangers inherent in the way a product is designed." *Laaperi v. Sears, Roebuck & Co.*, 787 F.2d 726, 729 (1st Cir. 1986). "It is not necessary that the product be negligently designed or manufactured." *Id.*

A central question in failure-to-warn cases is a comparison of the actual warning (if any) given by the manufacturer with the proposed warning that plaintiff says should have been given. *See, e.g., Niedner v. Ortho-McNeil Pharm., Inc.*, 90 Mass. App. Ct. 306, 309–10 (2016); *Kalivas v. A.J. Felz Co.*, 15 Mass. App. Ct. 482, 487 (1983); *Penn-America Ins. Co. v. Bay State Gas Co.*, 96 Mass. App. Ct. 757, 761–62 (2019); *KomTek v. Tucker & Rice, Inc.*, 1993 WL 818821, at *3-4 (Mass. Super. Ct. Dec. 22, 1993). When a complaint simply recites the elements of a failure-to-warn claim in boilerplate language without providing specific details about a defendant's omissions or inadequacies, normally the plaintiff has failed to carry his burden to show a failure to warn. *See, e.g., Bustamante v. Atrium Med. Corp.*, 2020 WL 583745, at *7 (S.D.N.Y. Feb. 6, 2020) (dismissing a failure-to-warn claim because "[n]otably absent from Plaintiffs' Amended Complaint is the exact language of the warnings contained on the device"); *Nowell v. Medtronic Inc.*, 372 F. Supp. 3d 1166, 1251-1255 (D.N.M. 2019) ("[Plaintiff] has not alleged that the Defendants sold their mesh absent any warning, and the Court will not presume this fact on [plaintiff's] behalf."); *Bond v. Johnson & Johnson*, 2021 WL 6050178, at *11 (D.N.J. Dec. 21, 2021) ("[Plaintiff] has not alleged the specific language in the warnings associated with

9

the Prolene 3D . . . the Court is unable to assess the warnings against the omissions [plaintiff] alleges.").

Here, it appears that the only statement in the complaint related to any claim based on failure to warn is that BrassCraft exhibited "negligence in failing to provide proper and adequate warnings and instruction regarding the hazards associated with the use of the subject water supply valve for its intended and foreseeable purposes." (Docket No. 23 ¶ 23). The complaint therefore does not allege sufficient facts to sustain a claim for negligent failure to warn, and Count 2 will be dismissed.

### B.     The Cross-Claims

#### 1.     Cross-Claim for Contribution (Count 1)

Harpe 94 Realty Trust has asserted a cross-claim for a contribution against BrassCraft. The cross-claim alleges that "[t]he property and consequential damages sustained by the plaintiff, if any, were the direct and proximate result of the negligence of BrassCraft and its breach of applicable warranties, for which BrassCraft is strictly liable." (Docket No. 30 ¶ 6). Harpe 94 contends that if were to be found negligent in this action, "then the cross-claim defendant, BrassCraft, was also negligent and therefore the cross-claim plaintiff is entitled to contribution" under Mass. Gen. Laws ch. 231B. (*Id.* at ¶ 7).

BrassCraft contends that cross-claim for contribution must fail because it is not ripe. It asserts that because "[t]here is no finding that defendants are jointly liable to plaintiff for any property damage," the cross-claim is "at best, premature."

Contribution claims are contingent claims that will become ripe only if the defendants are actually found liable. They are, therefore, technically premature. The Court could therefore dismiss the contribution claim without prejudice on the ground that the defendants have not alleged that they have discharged a common liability, and that they can bring a separate action in

the future should that contingency come to pass. *See* Mass. Gen. Laws ch. 231B, § 3(d) (providing one-year limitation period for contribution actions).

Nevertheless, it makes little sense to dismiss the cross-claim outright, only to revive it if the defendants are ultimately found liable, and possibly to conduct a new round of discovery at that point. There appears to be no requirement that a contribution claim be brought in a separate action, and dismissing the claim would achieve little.

The motion to dismiss the third-party claim for contribution will therefore be denied.

### 2. Cross-Claim for Indemnification (Count 2)

Harpe 94 Realty Trust has also asserted a cross-claim for indemnification against BrassCraft. The cross-claim "demands judgment enter against BrassCraft Manufacturing Company for all sums which the cross-claim plaintiff pays or is ordered to pay plaintiff, together with interest and costs incurred by defending against plaintiff's action and bringing the cross-claim." (Docket No. 30 ¶ 9).

BrassCraft contends that the cross-claim for indemnification fails to state a claim for two reasons. First, "the relationship (or lack thereof) between Harpe and BrassCraft cannot create vicarious or derivative liability." (Docket No. 38, 5). Second, "Harpe is not blameless," as "[p]laintiff claims that Harpe was negligent in failing to discover the leak; allowing the water leak to cause damage to the subject property' failing to have the premises regularly inspected or checked for issues involving equipment and/or fixtures; and otherwise failing to exercise due care under the circumstances." (*Id.*). BrassCraft also asserts that "even assuming that Harpe's claim was proper, it is premature." (*Id.* at 6).

A right to indemnification can arise in three ways. *Araujo v. Woods Hole, Martha's Vineyard, Nantucket S.S. Auth.*, 693 F.2d 1, 2 (1st Cir. 1982). First, a right to indemnification can be created by express agreement. *Id.* Second, "a contractual right to indemnification may be

11

implied from the nature of the relationship between the parties." *Id.*  Third, "a tort-based right to indemnification may be found where there is a great disparity in the fault of the parties." *Id.*

Here, Harpe 94 effectively concedes that its cross-claim fails to allege facts sufficient for a contractual right to indemnification, as its opposition makes no reference to the contract-based theory.  Furthermore, and in any event, the cross-claim itself contains no factual pleadings that plausibly support the existence of a special relationship between Harpe 94 and BrassCraft.

A tort-based, or common-law, right to indemnification is available "where the person seeking indemnification did not join in the negligent act of another but was exposed to liability because of that negligent act." *Rathbun v. Western Mass. Elec. Co.*, 395 Mass. 361, 364, 479 N.E.2d 1383 (1985).  It is "[d]esigned to shift the whole loss upon the more guilty of the two tortfeasors," and "has usually been available only when the party seeking it was merely passively negligent while the would-be indemnitor was actively at fault." *Araujo*, 693 F.2d at 3.  Furthermore, "[p]assive negligence has been limited to instances in which the indemnitee was vicariously or technically liable." *Id.*  However, "[w]here the party seeking indemnification was itself guilty of acts or omissions proximately causing the plaintiff's injury, tort indemnification is inappropriate." *Id.*

The cross-claim alleges that Harpe 94 is entitled to indemnity because any of its alleged liability was "caused by the negligent acts or omissions of BrassCraft and/or its breach of warranty, and the cross-claim plaintiff did not participate in the negligence." (Docket No. 30 ¶ 9).  It alleges that its liability "if any, is vicarious and derivative, while the liability of BrassCraft is direct and actual." (*Id.*).  Harpe 94 contends that "the failure which resulted in the water leak arose when Harpe's tenant dental operation was not open and the toilet was not in use" during the COVID-19 pandemic.  (Docket 47 ¶ 24).  It alleges that it is reasonable to infer that

BrassCraft's product "spontaneously and independently failed without warning" due to an "inherent defect in the valve itself" without "any alleged involvement, responsibility, act, or omission of or by Harpe." (*Id.* at ¶ 23-24).

BrassCraft contends that common-law indemnification is inappropriate because assuming that plaintiff's factual pleadings are true, Harpe 94's "conduct directly and proximately caused the water leak and resulting damages." (Docket No. 39, 5). However, under Fed. R. Civ. P. 12(b)(6), the Court is required to "accept[ ] the allegations in the cross-claims as true and draw[ ] all reasonable inferences in the cross-claimant's favor." *Humes v. Farr's Coach Lines*, 2016 WL 1031320, at *2 (W.D.N.Y. Mar. 8, 2016). *See also Scheurer Hospital v. Lancaster Pollard & Co.*, 2013 WL 173268, at *1 (E.D. Mich. Jan. 16, 2013); *Leon–Figueroa v. Tropigas De Puerto Rico, Inc.*, 2010 WL 11545575, at *3 (D.P.R. Mar. 22, 2010). Under the circumstances, the Court must assume that the allegations of the cross-claims are true, and therefore will not dismiss the cross-claim on that basis.

BrassCraft further contends that even if the cross-claim for indemnification was proper, it should still be dismissed because it is not ripe. The Court, however, will not dismiss the claim as premature for the same reasons set forth above concerning the cross-claim for contribution.

### 3. Cross-Claim for Breach of Warranty (Count 3)

The cross-claim for breach of warranty alleges that BrassCraft "designed, manufactured, distributed, supplied and/or placed into the stream of commerce" a water supply valve that was "unreasonably dangerous or unsafe for use for its intended use by reason of defects in its design and/or manufacture." (Docket 30 ¶ 11-12). It alleges that "[i]f the plaintiff suffered damages as alleged, which the cross-claim plaintiff denies, these damages, if any were caused by the defects in the BrassCraft water supply valve for which the defendant is liable as a breach of its express and implied warranties." (*Id.* at ¶ 14). Thus, Harpe 94 "demands judgment enter against

13

BrassCraft . . . for all sums which the cross-claim plaintiff pays or is ordered to pay plaintiff, together with interest and costs incurred by defending against plaintiff's action and bringing the cross-claim." (*Id.*).

The cross-claim for breach of warranties here is premised entirely on plaintiff's recovery of damages. It is duplicative of Harpe 94's claim for indemnification, and it will therefore be dismissed.

### IV.    Conclusion

For the foregoing reasons, defendant's motion to dismiss plaintiff's amended complaint is DENIED as to the implied-warranty claim set forth in Count 1, and otherwise GRANTED. Defendant's motion to dismiss the cross-claims filed against it by Harpe 94 Realty Trust is DENIED as to Count 1 and Count 2, and otherwise GRANTED.

**So Ordered.**

Dated:  January 26, 2024

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court